UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION


| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO:  5:13-MJ-1866-1 |
| | ) | |
| Plaintiff, | ) | CRIMINAL |
| | ) | |
| vs. | ) | Laredo, Texas |
| | ) | |
| SAMY BATISTA, | ) | Friday, December 13, 2013 |
| | ) | (10:17 a.m. to 10:19 a.m.) |
| Defendant. | ) | (10:42 a.m. to 11:00 a.m.) |
| | | (11:09 a.m. to 11:33 a.m.) |


PRELIMINARY EXAMINATION / IDENTITY AND DETENTION HEARING

BEFORE THE HONORABLE GUILLERMO R. GARCIA,
UNITED STATES MAGISTRATE JUDGE


Appearances:              See next page

Case Manager:             Ben Mendoza

Interpreters:             Ina Pool / Francisco Vergara

Court Recorder:           Veronica Cantu

Transcribed by:           Exceptional Reporting Services, Inc.
                          P.O. Box 18668
                          Corpus Christi, TX 78480-8668
                          361 949-2988


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

<u>APPEARANCES FOR:</u>

Plaintiff:                      SANJEEV BASHKER, ESQ.
                                Assistant United States Attorney
                                P.O. Box 1179
                                Laredo, Texas 78042-1179

Defendant:                      DANIEL DE MARIA, ESQ.
                                Merchant Law Group, LLP
                                203 East Post Road
                                White Plains, NY 10601

<u>INDEX</u>

| <u>GOVERNMENT'S WITNESSES</u> | <u>DIRECT</u> | <u>CROSS</u> | <u>REDIRECT</u> | <u>RECROSS</u> |
|---|---|---|---|---|
| DAVID KALEIKINI | 7 | 16 | | |
| ANA LANDIN | 25 | 31 | | |

| <u>GOVERNMENT'S EXHIBITS</u> | <u>RECEIVED</u> |
|---|---|
| 1, 2, 3 | 17 |
| 4 | 31 |

| <u>DEFENSE EXHIBITS</u> | <u>RECEIVED</u> |
|---|---|
| A, B | 34 |

4

1          <u>**Laredo, Texas; Friday, December 13, 2013; 10:17 a.m.**</u>

2          **(Official Interpreter Utilized for Translation)**

3                          <u>**Call to Order**</u>

4          **THE CLERK:**  All rise.

5          **THE COURT:**  Thank you.  Please be seated.

6          Marshal, can you bring up Daniel -- I'm sorry, Samy

7   Batista?

8          **MR. BASHKER:**  Your Honor, Sanjeev Bashker on behalf

9   of the United States of America.

10          **MR. DE MARIA:**  Daniel DeMaria appearing for Samy

11   Batista Magra (phonetic), your Honor.

12          **THE COURT:**  Please swear him in, please.

13          **THE CLERK:**  Please raise your right hand to be sworn.

14      **(Defendant sworn)**

15          **THE DEFENDANT:**  I swear.

16          **THE COURT:**  Is your true and correct name Samy

17   Batista?

18          **THE DEFENDANT:**  Samy Batista Magra. **(pronunciation**

19   **clarified)**

20          **THE COURT:**  Mr. Batista, you're here with your

21   attorney, Mr. DeMaria, standing next to you?

22          **THE DEFENDANT:**  Yes.

23          **THE COURT:**  You are here on Cause Number 13-mj-1866.

24          What's the status, Mr. DeMaria?

25          **MR. DE MARIA:**  Oh, we're ready, your Honor, for the

1  Preliminary Hearing, the Identity Hearing and the Detention

2  Hearing.

3          **THE COURT:**  You are requesting all three of them?

4          **MR. DE MARIA:**  Yes, your Honor.

5          **THE COURT:**  Okay, well, I'll take the announcement.

6  I'll take you up at the end of the docket.  I have some other

7  matters to take care of and then we'll take up -- we'll start,

8  I guess, with the Identity Hearing at that point, so --

9          **MR. BASHKER:**  And, your Honor, just for the record,

10 our position is, and maybe the Court can (indiscernible)

11 clarification, we are prepared to go forward, let me say that,

12 so we are prepared.  We have a witness here, that the Defendant

13 would be entitled to an Identity Hearing.

14         We believe the Preliminary Hearing should be

15 litigated in the Southern District of New York.  We can address

16 that at that certain point.

17         **THE COURT:**  We'll take up that issue after the

18 Identity Hearing.

19         **MR. BASHKER:**  Thank you, your Honor.

20         **MR. DE MARIA:**  Thank you, your Honor.

21         **THE COURT:**  Okay.  Thank you.  Have a seat,

22 Mr. Batista.  We'll call up -- we'll start your case in a

23 moment.

24         **MR. DE MARIA:**  Thank you, your Honor.

25         **THE COURT:**  Thank you.

1        (Court attends other matters from 10:19 to 10:42 a.m.)

2            THE COURT:  Okay, Mr. DeMaria, are you ready to

3  proceed?

4            MR. DE MARIA:  Yes, your Honor.

5            THE COURT:  Okay.  Marshals, can you make space for

6  Mr. Batista at your Counsel table with his attorney?

7            Mr. Bashker, are you ready for --

8            MR. BASHKER:  Yes, your Honor, we're ready.  The

9  Government witness is here, your Honor.

10           THE COURT:  Okay.  We're starting with -- as you

11  mentioned, we're starting with the Identity Hearing.

12           MR. BASHKER:  Right, your Honor.

13           David, would you come up here, please?

14           You guys can stay if you're done, if you want.  Do

15  you want to watch?  Go ahead.

16           MR. SPEAKER:  No, that's okay.

17       (Attorneys confer)

18           THE COURT:  Come on up.  We're here on Cause Number

19  13-cr-1102 -- oh, I'm sorry, it's not that number.  I'm sorry.

20           It's 13-mj-1866, the *United States of America versus*

21  *Samy Batista.*

22           Mr. Batista is present with his attorney, Mr. Daniel

23  DeMaria.  We are set for an Identity Hearing first this

24  morning.

25           Government, are you ready to proceed?

Kaleikini – Direct / By Mr. Bashker                    7

1          **MR. BASHKER:**  We are, your Honor.

2          **THE COURT:**  Okay, you can call your first witness.

3          **MR. BASHKER:**  Your Honor, the United States of

4    America would call Agent --HSI Special Agent David Kaleikini to

5    the witness stand.

6          **THE COURT:**  Come on up, Agent.  Swear him in, please.

7          **THE CLERK:**  Please raise your right hand to be sworn.

8          **DAVID KALEIKINI, GOVERNMENT'S WITNESS, SWORN**

9          **THE WITNESS:**  Yes.

10         **THE COURT:**  Have a seat, Agent.  Agent Kaleikini,

11   spell your name for the record, your last name?

12         **THE WITNESS:**  Yes, sir.  It's K-A-L-E-I-K-I-N-I.

13                      **DIRECT EXAMINATION**

14   BY MR. BASHKER:

15   Q    Agent, it's Agent Kaleikini?

16   A    Yes, sir.

17   Q    All right.  Good morning, sir, how are you?

18   A    Good morning.  Great.

19   Q    Yes, sir, briefly, if you could tell us where are you are

20   employed and what your role is?

21   A    Yes, I'm a HSI Special Agent with Homeland Security

22   Investigations in Laredo, Texas.

23   Q    And how long have you been an HSI agent for?

24   A    Approximately four years.

25   Q    Okay, sir, and just briefly, you went through training

Kaleikini - Direct / By Mr. Bashker                    8

1  before that?

2  A    Yes, six months at an academy.

3  Q    A HSI Academy?

4  A    Yes, at the Federal Law Enforcement Training Center in

5  Georgia.

6  Q    And you graduated, correct?

7  A    Yes.

8  Q    And --

9         THE COURT:  Hold on a moment.  You need to slow down

10  just a little bit so the interpreter can keep up with you guys.

11         MR. BASHKER:  Yes, sir, sorry.  Yes, sir.

12  BY MR. BASHKER:

13  Q    Agent Kaleikini, briefly, you are familiar with executing

14  arrest warrants, sir?

15  A    Yes.

16  Q    And you are familiar with the geography here between

17  Laredo, Texas and the Country of Mexico?

18  A    Yes.

19  Q    All right.  I'm going to draw your attention right to the

20  evening -- early evening, late afternoon of December 5th, 2013,

21  which is, I believe, last Thursday.

22         Were you working that day?

23  A    Yes.  I was a Duty Agent that day.

24  Q    Okay.  And when you say "Duty Agent," what does that mean?

25  A    For 24 hours we respond to the bridges, it could be the

1  checkpoints, any -- any time CBP or obviously (indiscernible)

2  an arrest warrant or a load of dope or something like that,

3  they would call the Duty Agent and we respond to -- to go check

4  out what they have.

5  Q    Were you working that evening around 5:00 or 6:00 p.m. on

6  December 5th, 2013?

7  A    Yes.  I was still on surveillance when I received a phone

8  call.

9  Q    All right.  Did there come a point in time where you

10 received information about an active arrest warrant from the

11 Southern District of New York Federal Court for a Samy Batista?

12 A    Yes.

13 Q    And if you could tell the Court, what took place around

14 5:00 o'clock that day?

15 A    I received a call from Special Agent Roulette (phonetic),

16 an HSI Agent from New York.  He informed me that the CBP

17 officers from Bridge Number 2 had called him and informed him

18 that a person there with an active arrest warrant was being --

19 had been found going outbound going into Mexico.

20         I called CBP and asked them if they, indeed, had this

21 person.  They confirmed.

22         I asked the Agent to please send me a copy of the

23 warrant as well as a picture to identify the person in the

24 warrant.  He did, and I also asked him to send it to the CBP

25 officers at the bridge so they had a copy of the warrant, after

Kaleikini – Direct / By Mr. Bashker                10

1   which I proceeded down to Bridge Number 2 to -- to make sure

2   that this was the person in the warrant.

3   Q    And you said "CBP."  What is CBP?

4   A    Customs and Border Protection.

5   Q    All right, that's also a Federal agency?

6   A    Yes, sir.

7   Q    And where were you when you first received a phone call

8   that a Samy Batista had been -- and I'm going keep -- go a

9   little slower for the translator, but had been arrested at

10  Bridge Number 2 here?

11  A    I was at the -- I was following a car at the mall.

12  Q    I'm sorry?

13  A    At the mall, the Laredo Mall.

14  Q    Okay.

15       **MR. BASHKER:**  Permission to approach the witness,

16  your Honor?

17       **THE COURT:**  Go ahead.

18       **MR. BASHKER:**  Okay.

19  **BY MR. BASHKER:**

20  Q    And, sir, I'm going to show you what's been marked for

21  identification purposes as Government's Exhibit 1.  If you

22  could take a second to look at that and familiarize yourself

23  with that document?

24  A    Yes, sir.

25  Q    What did I hand you there?

1   A    This is the arrest warrant that was emailed to me by

2   Special Agent Roulette.

3   Q    And Special Agent Roulette, is he an HSI Agent?

4   A    Yes, sir.

5   Q    And where is he located?

6   A    In New York.

7   Q    In the Southern District of New York, correct, sir?

8   A    Yes.

9   Q    All right.  And let's draw your attention again to the top

10  of Government's Exhibit 1.

11          This is a, and I'm going to summarize it just to be

12  brief, but the *United States versus Samy Batista,* correct?

13  A    Yes, sir.

14  Q    A.k.a. BonBon?

15  A    Yes, sir.

16  Q    And this is an arrest warrant?

17  A    Correct.

18  Q    All right.  And then it is signed at the bottom here it

19  looks like on December 5th, 2013 by the Honorable James C.

20  Francis, IV, I believe, United States Magistrate Judge,

21  Southern District of New York, correct?

22  A    Yes, sir.

23  Q    All right.  And then underneath it there's a box that says

24  "Return," correct?

25  A    Yes, sir.

1  Q    If you could explain to us, what does that box symbolize?

2  A    On the Return -- when you're presented for an Initial

3  Appearance you go in front of the -- in the Judge's chambers

4  and you swear that you have executed this warrant and you put

5  your signature, your name and the date that the person was

6  arrested.

7  Q    And is this your signature, sir?

8  A    Yes, sir.

9  Q    And what date was the individual arrested?

10  A    This was on December the 5th, 2013.

11  Q    Okay, very good.  I'm going to show you also marked for

12  identification purposes as Government's Exhibit 2.  If you

13  could take a look at that document and familiarize yourself

14  with that?

15  A    Yes, sir.

16  Q    What have I handed to you?

17  A    This is the photo that Special Agent Roulette sent with --

18  via email to me, along with the warrant.

19  Q    And what is it a photo of?

20  A    This is the photo of the Defendant, Mr. Bautista.

21  Q    Okay, and why is this photo sent to you?

22  A    It's important that we confirm the identity -- the

23  identity of the person on the warrant so we don't arrest the

24  wrong person.

25  Q    All right, so you take the photo --

1   A    Yes.

2   Q    -- and the warrant?

3   A    Yes.

4   Q    And then you go to Bridge 2?

5   A    Yes.

6   Q    And what happened next?

7   A    I speak to the Custom and Border Protection officers.  I

8   asked if -- how they confirmed that this was the person.  They

9   told me they had his driver's license.

10            I asked for a copy of that driver's license, along

11  with my photo, and asked them if they had an arrest warrant,

12  and they did.  With those two pieces of documents I was able to

13  confirm the person, and I transported him to Webb County.

14  Q    Did you look at the individual they had detained?

15  A    Yes.

16  Q    And you compared that -- his photo to that individual?

17  A    Yes.  I personally drove him to Webb County.

18  Q    Was it the same individual, in your opinion?

19  A    Yes, sir.

20  Q    I'm going to show you now what's been marked for

21  identification as Government's Exhibit C.  This is a copy of a

22  document, correct?

23  A    Yes, sir.

24  Q    And what is this a copy of, sir?

25  A    The driver's license from the State of New York.

1   Q    And who is this a driver's license for?

2   A    It says Samy Bautista Magra.

3   Q    Is that the driver's license that you mentioned Customs

4   and Border Patrol officers had which they found on the

5   Defendant or the individual that day?

6   A    Yes.

7   Q    And there's additional writing on this.  What is the

8   additional writing?

9   A    That's the Special Agent Ryan Roulette's name.

10  Q    These are your notes?

11  A    Yes, they're my notes, yes.

12  Q    So Government's Exhibit C is -- 3, excuse me, is a copy of

13  the Defendant's driver's license and your notes, correct?

14  A    Yes, sir.

15  Q    All right.  And this is the same individual you detained

16  that day?

17  A    Yes, sir.

18  Q    All right.  After detaining -- after confirming the

19  identity of the individual, in your opinion, what did you do

20  next?

21  A    Yes, after I confirmed the identity of the person I

22  introduced myself to Mr. Bautista and I let him know there was

23  a warrant for his arrest and that I would be transporting him

24  to Webb County.

25  Q    So you were able to ascertain it was an active valid

1    warrant, correct?

2    A    Yes, sir.

3    Q    And after transferring the Defendant, you mentioned there

4    was a Return that took place here in our Magistrate Court's

5    chambers.

6    A    Yes.

7    Q    Was that the extent of your involvement in this

8    investigation?

9    A    Yes.

10   Q    And you don't have any personal knowledge regarding the

11   investigation or the reasons for the active warrant in New

12   York, correct?

13   A    No, I -- I'm not even sure it's the same -- an HSI case.

14   Q    Okay.

15   A    I just served the warrant.

16   Q    But you know it was an active warrant, correct?

17   A    Yes.

18   Q    Okay.

19        **MR. BASHKER:**  I have nothing further, your Honor.

20   Thank you.

21        **THE COURT:**  Mr. DeMaria?

22        **MR. DE MARIA:**  Thank you, your Honor.

23   //

24   //

25   //

1                        **CROSS EXAMINATION**

2    **BY MR. DE MARIA:**

3    Q    Agent Kaleikini, I hope I pronounced that correctly?

4    A    That is correct.

5    Q    What was the exact name on the arrest warrant, sir?  Is it

6    Samy Bautista a.k.a. BonBon, B-O-N-B-O-N?

7    A    **(No audible response)**

8    Q    And you testified the Defendant was in possession of the

9    driver's license?

10   A    No.  The CBP officers gave me this driver's license they

11   said was on his possession.

12   Q    And what was the exact name on that driver's license, sir?

13   A    Samy Bautista Magra.  I'd like to see that exhibit again,

14   I'll give you the exact name.

15   Q    Samy Bautista Magra?

16   A    Yes.

17   Q    Magra.  So a different name than the one that's on the

18   arrest warrant?

19   A    Correct.

20   Q    And was Mr. Batista Magra in possession of any other

21   identification?

22   A    I don't recall if he had other documents.  He had a

23   wallet, but I don't recall whether other documents were in it.

24   Q    Okay.

25              **MR. DE MARIA:**  And, your Honor, may I approach the

                    Kaleikini - Cross / By Mr. De Maria                17

1    witness?

2           **THE COURT:**  Sure.

3      **(Counsel confer)**

4           **MR. BASHKER:**  I mean, he's not going to -- you can

5    ask if he has knowledge of it, but if he doesn't have

6    knowledge, you know -- yeah, I have no objection, your Honor.

7    **BY MR. DE MARIA:**

8    Q    Do you recognize this document, Defendant's Exhibit A?

9    A    Yes, sir, I've seen the document.  I do not know what it

10   is.

11   Q    Okay.

12          **MR. DE MARIA:**  And no further questions, your Honor.

13          **THE COURT:**  Okay.

14          **MR. DE MARIA:**  Thank you very much.

15          **MR. BASHKER:**  Your Honor, with regards to the

16   identification the Government would rest its case at this time.

17          **THE COURT:**  Are you going to move to admit the

18   Exhibits?

19          **MR. BASHKER:**  I am, at this point we're going to move

20   to admit Government's Exhibits 1, 2 and 3 which I have just

21   shared with Defense Counsel regarding solely identification.

22          **MR. DE MARIA:**  No objections, your Honor.

23          **THE COURT:**  Okay, they will be so admitted.

24      **(Government's Exhibit Numbers 1, 2 and 3 were received in**

25   **evidence)**

1          **MR. BASHKER:**  Thank you, your Honor.

2          **THE COURT:**  The Government rests?

3          **MR. BASHKER:**  The Government rests its case with

4    regards to identification, your Honor.

5          **THE COURT:**  Do you -- Mr. -- go ahead and step down.

6    Thank you.  I'm sorry.

7          **THE WITNESS:**  Thank you.

8      **(Witness excused)**

9          **THE COURT:**  Mr. DeMaria, do you have any witnesses?

10         **MR. DE MARIA:**  No, your Honor.

11         **THE COURT:**  Do you rest, as well?

12         **MR. DE MARIA:**  Yes, your Honor.

13         **THE COURT:**  Okay.  Mr. Bashker, any arguments?

14         **MR. BASHKER:**  Yes, briefly, your Honor.

15         Your Honor, we have an active warrant -- with regard

16   to identification, an active warrant that was issued out of the

17   Southern District of New York.

18         You heard testimony from an experienced HSI Agent

19   regarding protocol when a Duty Officer is notified regarding a

20   -- an individual detained, trying to enter the Country of

21   Mexico from the United States with an active warrant.  He

22   subsequently testified he received a copy of the individual's

23   photo and the warrant from the HSI Agent in New York.

24         He took the photo and warrant then to the Border --

25   to the bridge to corroborate that the correct individual was

1    detained.  He was able to get a copy of the Defendant's

2    driver's license as well from the arresting CBP officers and

3    was able to corroborate that this was the individual in the

4    photo submitted from New York, which was further corroborated

5    with the Defendant's driver's license, which I believe was a

6    New York driver's license.

7              With regards to different surnames and additional --

8    I think it was an hyphenated name, Bautista Magra, I would

9    argue at this point in time the Government has made a

10   sufficient case.  We've identified the correct defendant who

11   was listed in that warrant, and the identity should be --

12   judicial notice should be taken at this point in time.  Thank

13   you.

14             **THE COURT:**  Mr. DeMaria, any arguments?

15             **MR. DE MARIA:**  Yes, your Honor.  Thank you.

16             My client's name is clearly Samy Bautista Magra.

17   That's what was on the driver's license.

18             The arrest warrant, your Honor, is for Samy Batista,

19   clearly a different last name, and we would submit that the

20   warrant does not relate to this Defendant.

21             **THE COURT:**  Anything else?

22             **MR. DE MARIA:**  No, that's it.  Thank you, your Honor.

23             **THE COURT:**  Okay.  Having heard the testimony and I

24   have reviewed the information presented and arguments

25   presented, Mr. Batista, I find that you are, in fact, the

1    individual named in this warrant for your arrest.

2            And now we need to go forward.  I guess, Mr. Bashker,

3    I'll hear your arguments concerning whether or not a

4    Preliminary Exam Hearing, whether or not the Defendant is

5    entitled to one or not.

6            **MR. BASHKER:**  Your Honor, our position is when you

7    have a situation like this where someone is -- it was a sealed

8    Complaint, so he has not been indicted yet, but there's a

9    pending investigation where a warrant is issued out of a

10   different District, he is entitled in the arresting District

11   which is -- if it's different than the District where the

12   warrant was issued, he's entitled to an Identity Hearing and a

13   Detention Hearing.

14           The Preliminary Exam Hearing, in our position, should

15   be litigated in the Southern District of New York which happens

16   to be the arresting agency for a lot of reasons:

17           For financial efficiency purposes and bringing

18   witnesses down;

19           Two, to challenge the validity of the warrant that

20   was issued by a different judge with his own rationale, what

21   took place in that regard.

22           We do agree he's entitled to an Identity and

23   Detention Hearing and we are prepared to go forth on the

24   Detention Hearing.

25           **MR. DE MARIA:**  Judge, Rule 40(B), Rules of Criminal

1    Procedure state that if you're arrested for failing to appear

2    in another District for violating conditions of release set in

3    another District, that's Rule 40(A)(2)(b) states that the Judge

4    must proceed under Rule 5(C)(3) as applicable.

5              Rule 5(C)(3) says that if you are arrested in a

6    District other than one where the offense was allegedly

7    committed that the initial appearance must be in the District

8    of arrest, and that the Magistrate Judge must conduct the

9    Preliminary Hearing, if required, by Rule 5.1.

10             And 5.1 states that the Preliminary Hearing must be

11   conducted unless, A, the Defendant waives the hearing; B, the

12   Defendant is indicted; C, the Government files an Information;

13   or if the Defendant is charged with a misdemeanor.  Otherwise,

14   there must be a Preliminary Hearing and we would request that

15   it be heard in this District, your Honor.

16             **THE COURT:**  Mr. DeMaria, what do you -- what do you

17   believe the substance of that Preliminary Exam Hearing should

18   be?

19             **MR. DE MARIA:**  We would like to see the --

20             **THE COURT:**  Concerning what?

21             **MR. DE MARIA:**  Basically what offense -- what

22   condition of release Mr. Batista is alleged to have violated,

23   and whether or not it pertains to him.

24             **THE COURT:**  Mr. Bashker, and I'm not sure if your

25   arguments were angled towards the Complaint, because if they

1    were I think Mr. DeMaria's arguments are a little more direct.

2           Really, the only -- the only issue that I have to

3    determine over -- concerning the Preliminary Exam Hearing would

4    be the terms of -- of what he allegedly violated.

5           It's not --

6           **MR. BASHKER:**  Sure.

7           **THE COURT:**  We're not going to litigate the -- we're

8    not going to talk about the Complaint and what the Probable

9    Cause is for the Complaint, it's only as to whether or not

10   there's Probable Cause concerning these alleged violations.

11          **MR. BASHKER:**  Okay.

12          **THE COURT:**  Is that what -- that's what you're

13   stating, correct?

14          **MR. DE MARIA:**  Yes, your Honor.  Yes, I believe that

15   the Complaint, if you will in this case, will be the Pretrial

16   Services Memorandum from Ms. Cudina (phonetic) which alleged

17   the arrest warrant.

18          **MR. BASHKER:**  I guess to respond to that, your Honor,

19   if that's the case I would just proffer -- I still believe you

20   should have -- the Preliminary Hearing should be held in the

21   District that issued the warrant.

22          But I would proffer the Detention and the Report that

23   Pretrial Services has just compiled which articulates why the

24   warrant was issued.

25          **THE COURT:**  Well, the thing is, the long and short of

1   it is this, I mean, in essence -- I mean, you can proffer it,

2   but you need to proffer it through a witness in this sense.

3           The same way if we were talking about a Preliminary

4   Exam Hearing on a Complaint you would proffer it through your

5   witness, and normally it's -- for instance, if it was a Border

6   Patrol case it wouldn't be the actual agent that signed off on

7   the Complaint --

8           **MR. BASHKER:**  Right.

9           **THE COURT:**  -- it would be your agents that were

10  present in the courtroom, so if you want some time to talk to

11  the Pretrial Service Office, and if that's who you're going to

12  call as a witness for the Preliminary Exam Hearing, I'm more

13  than happy to take a break so that you-all -- all of you can

14  sit and talk to the Pretrial Service Office.

15          **MR. BASHKER:**  All right.

16          **THE COURT:**  But I intend to go forward.  I think

17  Mr. DeMaria is right in reading the Rule, I think it refers

18  back to Rule 5 and -- and I think Mr. Batista is entitled to a

19  Preliminary Exam Hearing, but it's regarding the substance of

20  the arrest warrant which is the violations of his bond

21  conditions.

22          **MR. BASHKER:**  Yes --

23          **THE COURT:**  So that's what we're really here to talk

24  about, not -- I think he must have either had a Prelimin on the

25  Complaint or he waived it in New York when he was initialed on

1    that sometime back before he was released on bond initially.

2    So that's not going to be talked about here, we're just talking

3    about the bond conditions and the alleged violations of that

4    bond condition.

5            I'll have that Preliminary Exam hearing -- I'll give

6    you-all a few minutes to -- to review your information and make

7    sure you have what you need.

8            I need to take a quick break anyway, but I'll be out

9    in about -- less than 5 minutes to begin with the Preliminary

10   Exam Hearing.

11           **MR. BASHKER:**  Very well, your Honor.

12           **THE COURT:**  Anything else, Mr. Bashker?

13           **MR. BASHKER:**  Nothing, your Honor.  Thank you.

14           **THE COURT:**  Mr. DeMaria?

15           **MR. DE MARIA:**  Nothing, your Honor.

16           **THE COURT:**  Okay.  I'm going to take a short recess.

17           **THE CLERK:**  Please rise.

18       **(Recess taken from 11:01 to 11:09 a.m.)**

19           **THE COURT:**  Okay, Thank you.  Please be seated.

20           Mr. Bashker, do you think you need some more time?

21           **MR. BASHKER:**  No, I'm ready, your Honor.

22           **THE COURT:**  Okay.  So now we're still here on the

23   same Cause Number.  We're set now for the Preliminary Exam

24   Hearing.

25           Mr. Bashker, are you ready to proceed?

Landin – Direct / By Mr. Bashker                          25

1          **MR. BASHKER:**  Yes, sir, your Honor.

2          **THE COURT:**  Go ahead and call your first witness.

3          **MR. BASHKER:**  The United States of America calls

4    Ms. Ana Landin from the United States Pretrial Services here in

5    Laredo.

6          **THE COURT:**  Come on up, Ms. Landin.

7          **THE CLERK:**  Please raise your right hand.

8             **ANA LANDIN, GOVERNMENT'S WITNESS, SWORN**

9          **THE WITNESS:**  Yes.

10                      **DIRECT EXAMINATION**

11   **BY MR. BASHKER:**

12   Q    Good morning, ma'am.  Could you please state your name for

13   the record, and spell your first and last name?

14   A    My name is Ana Landin, A-N-A, last name L-A-N-D-I-N.

15   Q    And, Ms. Landin, where are you currently employed at?

16   A    With the US Pretrial Services in Laredo, Texas.

17   Q    And in what capacity do you work there?

18   A    Officer.

19   Q    You are a Pretrial Services Officer?

20   A    Yes.

21   Q    And how long have you been a Pretrial Services Officer

22   here in Laredo?

23   A    Five years.

24   Q    All right.  Briefly, what are your responsibilities as a

25   Pretrial Services Officer?

1   A    To do investigation work, prepare reports for the Judge,

2   supervise whether they get released on Pretrial release.

3   Q    And do you communicate with other Districts when it comes

4   to their Pretrial Service conditions?

5   A    Yes, we do.

6   Q    All right.  I'm going to draw your attention right to

7   roughly on or about December 5th, 2013, December 6th, 2013.

8        There came a point in time where you learned, as a

9   Pretrial Services Officer, that an individual named Samy

10  Batista had been detained here in the Southern District of

11  Texas regarding a Pretrial supervision issue from the Southern

12  District of New York.

13  A    Yes.

14  Q    All right.  Upon learning that information did you contact

15  the Pretrial Services Officer in New York?

16  A    Yes, I did.

17  Q    And if you tell the Court who you spoke to and what took

18  place next?

19  A    I spoke to the US Pretrial Services Officer Erica Cudina.

20  Q    Okay, and she's in New York, correct?

21  A    Yes.

22  Q    And what was the extent of that conversation?

23  A    Well, basically I called her to find out how Defendant

24  Samy Batista was doing on his Pretrial Release, and she said

25  there was a bench warrant that had been issued out on December

Landin – Direct / By Mr. Bashker                    27

1   the 6th, and she submitted -- she submitted a memo, a copy of

2   that memo that she submitted to the Court, and I have a copy

3   with me right now.

4   Q    Okay.

5   A    And she also related that he had failed to report to the

6   Pretrial Services office and that he had failed to obtain the

7   two co-signers that he had agreed to provide for his initial

8   release.

9   Q    Okay.

10           **MR. BASHKER:**  And -- permission to approach the

11   witness?

12           **THE COURT:**  Go ahead, sure.

13   **BY MR. BASHKER:**

14   Q    All right.  I'm going to show you, ma'am, what's been

15   marked for identification purposes as Government's Exhibit 4.

16   Take a second and look at this document and familiarize

17   yourself with it.

18   A    Yes.

19   Q    Are you familiar with it?

20   A    Yes.

21   Q    Okay.  All right, it's fair to say that in this document

22   you have both the Pretrial Services Report that was submitted

23   to you, or submitted to the Court from the Southern District of

24   New York?

25   A    Yes.

1  Q    And at the end of this, the final two pages, there's an

2  addendum to the Pretrial Services Report that was compiled by

3  you, correct?

4  A    Yes.

5  Q    All right.

6  A    Correct.

7  Q    And these were -- let me start with the first part, is

8  this the Pretrial Services Report that you mentioned you

9  reviewed and received from Ms. Erica Cudina in New York?

10 A    Yes.

11 Q    That's regarding the individual Samy Batista, correct?

12 A    Correct.

13 Q    All right.  And -- all right, I draw your attention to

14 Page -- strike that.

15       Page 5, listed as Page 5, Government Exhibit 4, the

16 name of the Pretrial Services Officer is Erica A. Cudina, US

17 Pretrial Services Officer, and it's dated November 12th, 2013,

18 correct?

19 A    Correct.

20 Q    And it reflects a recommendation regarding conditions of

21 his probation or supervision -- supervision in the community,

22 correct?

23 A    Correct.

24 Q    All right.  Drawing your attention now to Page 1 of your

25 Addendum, which is part of Government's Exhibit 4, I'm going to

Landin - Direct / By Mr. Bashker                    29

1   ask you to read into the record the first two paragraphs, first

2   starting "November 12th, 2013" and then "February 4th, 2013."

3   Thank you.

4   A    Yes.

5            "On November 12th, 2013 the Defendant made his

6            initial appearance before the Honorable Henry Pigman

7            in the Southern District of New York after being

8   charged by Criminal Complaint with conspiracy to possess

9   cocaine.  He was ordered released on a 150,000 unsecured bond,

10  two co-sureties and other bond conditions as set out by

11  Pretrial Services.  The Defendant was being supervised by US

12  Pretrial

13  Services Officer Erica Cudina in New York, New York."

14           "On December 4th, 2013 the Defendant failed to report

15           to Pretrial Services as directed.  Attempts to

16           contact the Defendant and his wife were unsuccessful.

17           On December the 5th, 2013 AUSA Daniel Noble

18           (phonetic) requested a bench warrant be issued

19           alleging the Defendant had failed to obtain the two

20           co-sureties as ordered by the Court.  Pretrial

21           Services recommended the Defendant's bail be

22           revoked.  A bench warrant was issued."

23  Q    All right.  And you prepared this Addendum, correct,

24  Ms. Landin?

25  A    Yes, correct.

EXCEPTIONAL REPORTING SERVICES, INC

1  Q    That what you just read in the record was an accurate

2  reflection of what information you learned in talking with

3  Ms. Cudina in New York in your review of this case, correct?

4  A    Correct.

5  Q    All right.  And there was an active warrant -- there has

6  been testimony of this already today, that there was an active

7  warrant -- bench warrant that was issued, to your knowledge,

8  for the -- from the Southern District of New York regarding

9  this Defendant's violation of his Pretrial Service conditions,

10 correct?

11 A    Yes.

12 Q    Now is that the standard practice when you have a -- an

13 individual who is -- there is a warrant issued for his arrest

14 from one district but he's detained in a different district, is

15 that how Pretrial Services communicates with each other?

16 A    Yes.

17 Q    So you would be a fair representation and representative

18 of Pretrial Services regarding the reports in this case,

19 correct?

20 A    Correct.

21 Q    All right.  You don't have any personal knowledge in New

22 York because you didn't interview the Defendant there, correct?

23 A    Exactly.

24 Q    Okay.

25           **MR. BASHKER:**  Your Honor, I would -- actually at this

1    time I would make a Motion to admit Government's Exhibit 4 into

2    the record which is the Pretrial Services Report from New York

3    supplemented with an Addendum from the Southern District of

4    Texas, as Pretrial Services as testified here today as well.

5               **THE COURT:**  Mr. DeMaria, any objections?

6               **MR. DE MARIA:**  No, your Honor.

7               **THE COURT:**  All right.  I'll admit it into evidence,

8    but I'm going to put it under seal because it has personal

9    information.

10           **(Government's Exhibit Number 4 was received in evidence)**

11              **MR. BASHKER:**  Very good, your Honor.  Pursuant to

12   this submission nothing further on behalf of the United States.

13              **THE COURT:**  Okay.  Mr. DeMaria?

14                        **CROSS EXAMINATION**

15   **BY MR. DE MARIA:**

16   Q    Ms. Landin, have you met the Defendant before today?

17   A    Yes.

18   Q    And when was that?

19   A    During his initial appearance on December the 9th, 2013.

20   Q    So that's the first time you ever met Mr. Batista?

21   A    Yes.

22   Q    And were you responsible for supervising him prior to

23   then?

24   A    No.

25   Q    Was Erica Cudina?

1   A    Yes.

2   Q    And where is Ms. Cudina today?

3   A    In New York.

4   Q    And you had mentioned that you brought a violation memo

5   with you?

6   A    Yes.

7        **MR. DE MARIA:**  Your Honor, may I approach the

8   witness?

9        **THE COURT:**  Yes.

10  **BY MR. DE MARIA:**

11  Q    I'm going to show this document which I'd like to mark as

12  Exhibit A for identification purposes, Defendant's Exhibit A.

13  A    Uh-huh (yes.)

14  Q    Is this a copy of the memo?

15  A    Yes, it's the copy I have.

16  Q    Okay.  And would you please state the name of the

17  Defendant that is on the memo?

18  A    Sandy Batista.

19  Q    And would you please spell that for us?

20  A    S-A-N-D-Y B-A-T-I-S-T-A.

21  Q    Okay, and I'm going to show you a document which I'd like

22  to mark as Defendant's Exhibit B for identification purposes.

23        Do you recognize this document?

24  A    I believe I haven't seen this document.  I can compare it

25  to the one I have.

1  Q    Have you seen this type of document before?

2  A    Oh, yes.

3  Q    And would you describe it for us?

4  A    In this case this is a Sealed Complaint.

5  Q    And what is the name of the Defendant on that case?

6  A    Sandy Batista Magra.

7  Q    And would you please tell us when that was dated?  I

8  believe it's on the last page.

9  A    It was dated August 28, 2013.

10  Q    Okay.  And from your knowledge of Pretrial Services, would

11  a defendant who was charged with conspiracy to commit

12  healthcare fraud, would he be under some type of Pretrial

13  release supervision or under the auspices of the Pretrial

14  Supervision Department?

15  A    So your question would be?  Can you repeat your question?

16  If he would be released on Pretrial release under this type of

17  charges?

18  Q    Not if he would be under release, but whether or not he

19  would be -- whether or not Pretrial Services would have had

20  dealings with that individual?

21  A    Yes.

22  Q    Okay.  And, again, the name on that was Sandy Batista, was

23  it?

24  A    Yes, Sandy Batista.

25  Q    Okay.

1          **MR. DE MARIA:**  Your Honor, I'd like to make a Motion

2   to admit Defense Exhibits A and B into evidence at this time.

3          **MR. BASHKER:**  I have no objection, your Honor.

4          **THE COURT:**  I'll admit them.

5      **(Defense Exhibits A and B were received in evidence)**

6   **BY MR. DE MARIA:**

7   Q    Ma'am, you've testified that Mr. Batista, and that's Samy

8   Batista, failed to report to Pretrial Services.  On what date

9   was that?

10  A    I do not have a date with me right now.  I was actually

11  trying to speak to his -- Officer Cudina, but she was in a --

12  she did not answer.

13  Q    And at what time was that appointment for?

14  A    I don't have a time.

15  Q    Okay.  So you simply don't know any specifics about this

16  appointment, is that correct?

17  A    Correct.

18  Q    Okay.  And you testified that Mr. Batista had to find two

19  financially responsible co-signers, is that correct?

20  A    Correct.

21  Q    And when was the deadline for signing?

22  A    I do not have a deadline.

23  Q    Okay.  And you testified that attempts were made to

24  contact Samy Batista on December 5th, is that correct?

25  A    Correct.

Landin - Cross / By Mr. De Maria                    35

1   Q    Were you the one who attempted to contact him?

2   A    No.

3   Q    Do you know who was?

4   A    Officer Cudina in New York.

5   Q    But you don't have any personal knowledge of this?

6   A    I had spoke to her and she told me she had attempted to

7   contact him and his wife.

8   Q    Okay, did she attempt to contact him by email?

9   A    To my knowledge?  I don't have that information.

10  Q    So you are not sure how did she attempted to contact him

11  then?

12  A    I know she contacted him by phone.  I don't know if she

13  attempted to contact him by email.

14  Q    And do you know which phone number she tried to contact

15  him at?

16  A    No.

17        **MR. DE MARIA:**  Your Honor, no further questions.

18        **MR. BASHKER:**  Nothing further, your Honor.

19        **THE COURT:**  Very well.  Thank you, Ms. Landin.  Go

20  ahead, you can step down.

21        **THE WITNESS:**  Thank you.

22     **(Witness excused)**

23        **THE COURT:**  Mr. Bashker, any other witnesses?

24        **MR. BASHKER:**  Nothing, your Honor.

25        **THE COURT:**  Very well.  Mr. DeMaria, any witnesses?

1          **MR. DE MARIA:**  No, your Honor.

2          **THE COURT:**  Okay.  Mr. Bashker, any arguments?

3          **MR. BASHKER:**  Sure.  Your Honor, with regards to the

4    Preliminary Exam issue, Government's Exhibit 4, I think, does a

5    good job articulating the position of Pretrial Services,

6    specifically in New York.  We have a Defendant here who had

7    certain conditions when he was allowed to be out on bond.

8    Those involved co-sureties, but maybe more importantly

9    reporting to Pretrial Services and he did not do that.

10          And as documented in the Addendum that Ms. Landin

11   testified to which she, herself, communicated with the actual

12   Probation Officer, Erica Cudina, she explained that Ms. Cudina

13   relayed to her that the Defendant did not report, did not

14   respond, additionally was contacted -- attempts made to reach

15   the Defendant's wife, not responsive, and finally there were

16   two co-sureties which the Defendant was required to provide and

17   he did not do that.  So you have multiple violations of the

18   bond conditions.

19          Clearly just one violation would be sufficient, but

20   you have multiple violations.  At that point in time she

21   notified the Magistrate Judge and an arrest warrant was issued.

22          That was corroborated through Ms. Landin's testimony.

23   Clearly Ms. Landin is not responsible for knowing what phone

24   number was called or whatnot by the Probation Officer -- by the

25   Pretrial Services Officer in New York, that's outside of her

1    personal knowledge.  But for purposes of this hearing she was

2    able to corroborate that information and give a -- really, I

3    think, thorough background of what led to the Defendant's

4    arrest warrant being issued.  That is all, your Honor.

5              **THE COURT:**  Mr. DeMaria?

6              **MR. DE MARIA:**  Your Honor, everything Ms. Landin

7    stated seemed to have been based on Defendant's Exhibit A,

8    which she testified to before I even presented her with a copy,

9    and that document states that it's with respect to Sandy

10   Batista.

11             And Defendant's Exhibit B clearly shows there is a

12   Defendant by the name of Sandy Batista in the Southern District

13   of New York, and so in my respectful submission the Court

14   cannot conclude that these violations occurred from Samy

15   Batista, they may have been Sandy Batista.

16             Additionally, and very importantly, Ms. Cudina, his

17   Pretrial Services supervisor, was not here to testify.

18             I have an Appellate decision from the US Court of

19   Appeals from the DC Circuit, *Washington vs Clemmer*, C-L-E-M-M-

20   E-R, and that is 339 at 2D, 715, and if I may read Footnote 11,

21   your Honor?

22             Footnote 11 states and they cite *Wirtz*, W-I-R-T-Z

23   *versus Baldor*, B-A-L-D-O-R *Electric Pro*:

24             "One obvious purpose of a Preliminary Hearing is to

25             provide confrontation between accuser and

1              (indiscernible).  Consequently ordinarily the

2         Complainant witness should be present to testify but,

3         of course, if because of physical or psychological

4         disability in a particular case, the Complainant -

5         the Complainant witness should not be called, his

6         presence may not be required."

7              There's no evidence that Ms. Cudina had any physical

8    or psychological disability.  In fact, Ms. Landin testified

9    that she had spoke to Ms. Cudina on the phone, and Mr. Batista

10   was denied his right to confront the accuser under the Sixth

11   Amendment to the US Constitution.

12              We don't know when the Pretrial Services appointment

13   was made.  We don't know at what time the appointment was

14   scheduled for.  We don't know when the deadline was for

15   signing.  (indiscernible) to the Court that it was two days

16   after Mr. Batista's arrest on that Friday, your Honor.  And

17   very simply stated, if the Court agrees with the case of

18   *Washington vs Clemmer,* the Court must hold that the Government

19   has not discharged its burden of -- at the Preliminary Hearing

20   stage.  And that is all, your Honor.  Thank you.

21              **MR. BASHKER:**  I'll just respond briefly, your Honor.

22              While I don't think we have a *Crawford* issue here, I

23   think that with regards to confrontation you have a situation

24   where you have an officer of the Court making a representation

25   on behalf of another officer regarding supervision.  This is

1    not a victim of a crime and I think Pretrial Services Officers

2    are capable of doing that, and that's our position today.  So

3    no *Crawford* problem there.

4            Secondarily, you know, one of the points of, I guess,

5    reviewing the terms of the supervision for purposes of

6    Preliminary Exam, supervision on the bond exists to make sure

7    we know where the Defendant is at.  I say "we," Pretrial

8    Services knows the Defendant is reporting in, he has co-

9    sureties.

10           Here you have a Defendant, it's in the testimony,

11   attempting to go to Mexico and leave the United States.  I

12   think the Court needs to take that into consideration when it

13   makes its decision regarding have we satisfied demonstrating

14   violations that led up to this warrant.

15           Finally, I want to say Ms. Landin talking to the

16   officer herself, she was able to firsthand relay that

17   information.  This is not a report being passed onto the Court.

18   She actually talked to the Pretrial Services Officer and

19   Ms. Landin's representation of what she put in her Addendum

20   (indiscernible) communication, firsthand itself, we think that

21   would be sufficient for satisfying any burden that exists in a

22   Preliminary Exam.  That's all.  Thank you.

23           **THE COURT:**  Having considered the testimony presented

24   and all of the arguments of Counsel, I find that there is

25   probable cause to believe that a Pretrial Service violation was

1    committed and that the Defendant committed a Pretrial Service

2    violation.   I order, I guess at this point, that he be held --

3    detained pending any further proceedings in this matter.

4            You are requesting your Detention Hearing now,

5    Mr. DeMaria?

6            **MR. DE MARIA:**  Yes, your Honor.

7            **THE COURT:**  Okay.  The Government goes --

8            **MR. BASHKER:**  Yes, your Honor.  Briefly, you've heard

9    a lot of testimony today.  We are requesting detention for the

10   following reasons:

11           One, the Defendant has a record, I think, with drug

12   involvement.  He's had a couple convictions, at least one,

13   there might be two you might remember out of the State of New

14   York, so he does have a prior criminal record.

15           Secondly, I'll make the representation that the

16   Complaint, while under seal, does involve drug charges and I

17   personally had a chance to talk to the United States Attorney

18   from New York yesterday once I finished my trial.  I spoke with

19   him and he related to me that the Defendant did admit his

20   involvement in the drug transaction.  The Defendant was allowed

21   out on bond pending Indictment for -- for cooperation purposes.

22   And the Defendant was given certain conditions, two co-

23   sureties, reporting in regularly to Pretrial Services to

24   maintain supervision of this Defendant.

25           Not only did the Defendant not abide by those

1   requirements, he left the entire State of New York, drove over

2   35 hours away to Laredo, Texas, where he has no ties, and was

3   trying to flee and leave and go into Mexico.  So he's clearly a

4   flight risk.  He's got prior convictions involving drugs and

5   he's made an admission, and I can read that as an Officer of

6   the Court, regarding current ongoing Complaint.  He is a flight

7   risk.  He is a danger to leave.  He clearly did not abide by

8   supervision and, furthermore, he must be detained pending this

9   issue being resolved in front of the Judge in New York.  That

10  is all, your Honor.  Thank you.

11          **THE COURT:**  Mr. DeMaria?

12          **MR. DE MARIA:**  Your Honor, there's no evidence that

13  Mr. Batista was fleeing.  Yes, he was on his way to Mexico, but

14  a lot of people vacation in Mexico.

15          Secondly, he left New York because he was receiving

16  threats which I mentioned in Court the other day as a result of

17  his extensive cooperation with the Drug Enforcement Agency.  He

18  received threats, not just to himself, but to his wife and his

19  child as a result of his cooperation, and that is partly why he

20  left was to protect them.

21          Most importantly, though, your Honor, is I would

22  submit that just because the Pretrial conditions in the past

23  were not sufficient to keep Mr. Batista in New York, that does

24  not mean that there are not conditions or combinations of

25  condition to assert that he would, in fact, stay in New York.

1          In this regard, there is that old saying that "locks

2    only keep honest people out" and perhaps it was a mistake from

3    Pretrial Services in New York and the Court there and myself

4    and the US Attorney to all say, you know, he doesn't need house

5    arrest, let's just let him go.  We'll get two people to sign

6    within a few weeks and he'll stay in New York.  That would be

7    very tempting to anyone, your Honor, and so I would submit that

8    he should receive bail and perhaps an appropriate bail

9    condition would be that he return to New York and report to

10   Pretrial Services within 72 hours, and before that, that two

11   financially responsible people co-sign for $150,000, people who

12   have moral persuasion over him and who will encourage him to do

13   the right thing so that they do not sustain heavy financial

14   losses and that -- that that would be appropriate, your Honor,

15   and then by returning to New York voluntarily it will assist

16   him in the case there.

17          And perhaps the Court would also impose that once he

18   gets back to New York, I'm not sure the Court has jurisdiction

19   for this, that he be under house arrest with ankle monitoring

20   and voice recognition.  And that is all --

21          Though, your Honor, if I also may, you might recall

22   the US Attorney mentioned that Mr. Batista had another drug

23   case, and that is correct, and he attended all of the Court

24   sessions for that, didn't miss a single one and he was, in

25   fact, on probation for five years in that case, and he did not

1    miss a single session of probation, and so that does show that

2    Mr. Batista is trustworthy to comply with any Order this Court

3    might make, and he has not missed a single appearance in this

4    case in New York, albeit there's only been one.  And that is

5    all, your Honor.  Thank you.

6              **THE COURT:**  Marshal, bring up Mr. Batista, please.

7              Mr. Batista, I've heard the arguments of the

8    Government and your attorney concerning whether or not you

9    should be -- I should grant you a bond in this case.

10              I am not persuaded that you should be given a bond in

11   this case.  There is a presumption in this case given at least

12   the Complaint, the allegations in the Complaint that you have

13   against you, and in light of this prior offense you have here

14   you're not only facing a mandatory minimum, but you are greatly

15   -- you could potentially be facing an enhancement in this case,

16   an enhancement if you are found guilty and if the Government

17   does certain things to enhance your penalty in light of that

18   prior conviction.

19              In light of that I find that you have not overcome

20   the presumption that you are at risk of flight and a danger to

21   the community.

22              More specifically, the fact that you were so far away

23   from the jurisdiction with which you were just released and

24   from all appearances it appears that you were fleeing the

25   United States and heading into Mexico.

44

1          As a note, Mr. DeMaria, I've lived here my entire

2   life and I know very few people who go to Mexico, much less

3   vacation in Mexico.  Albeit there are some who still vacation,

4   I'll give you that, it is a dangerous place nonetheless.

5          I'm going to order that you be detained pending

6   further proceedings in this matter, Mr. Batista.

7          I'm also going to order the Marshals to transfer you

8   to the Southern District of New York for further proceedings in

9   this matter.

10          Do you understand, Mr. Batista?

11          **THE DEFENDANT:**  I understand.

12          **THE COURT:**  Do you have any questions?

13          **THE DEFENDANT:**  No.

14          **THE COURT:**  Mr. DeMaria, anything else?

15          **MR. DE MARIA:**  No, your Honor.

16          **THE COURT:**  Mr. Bashker, anything else?

17          **MR. BASHKER:**  Nothing, your Honor.  Thank you.

18          **THE COURT:**  Okay, thank you.  You are remanded,

19   Mr. Batista.

20          Thank you, you are excused.

21          **(This proceeding was adjourned at 11:33 a.m.)**

22

23

24

25

## CERTIFICATION

I certify that the foregoing is a correct transcript from the
electronic sound recording of the proceedings in the above-
entitled matter.


_____                    June 21, 2014
            Signed                                      Dated



                    *TONI HUDSON, TRANSCRIBER*